IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MELISSA MARTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:23-cv-1076 (RDA/IDD) |
| ) | |
| STATESIDE ASSOCIATES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Stateside Associate Inc.'s Motion to Dismiss ("Motion") (Dkt. 20). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Defendant's Memorandum in Support (Dkt. 21), Plaintiff's Opposition Brief (Dkt. 27),[1] Defendant's Reply Brief (Dkt. 28), Plaintiff's Notice of Supplemental Authority (Dkts. 33, 34), and Defendant's Response (Dkt. 35), this Court GRANTS the Motion for the reasons that follow.[2]

---

[1] Plaintiff appears to have filed her original complaint *pro se*, although she was assisted by an attorney. *See* Dkt. 1. Before service of her complaint, however, Plaintiff retained her current counsel. Dkt. 4 (seeking extension of time to serve the complaint because counsel was retained "late evening on November 14, 2023"). Subsequently, counsel has filed all docket entries on her behalf.

[2] Also pending on the docket are Plaintiff's First Motion for Leave to Amend (Dkt. 29) and Plaintiff's Motion to Strike that motion (Dkt. 31). Plaintiff subsequently withdrew her Motion to Amend, however. Dkt. 32. Accordingly, the Motion for Leave (Dkt. 29) is hereby WITHDRAWN and the Motion to Strike (Dkt. 32) is DENIED AS MOOT.

1

I. BACKGROUND

A. Factual Background[3]

Plaintiff Melissa P. Martin was born in 1980. Dkt. 18 ¶ 3. On March 21, 2007, Plaintiff began her employment with Defendant as a Regulatory Counsel. *Id.* ¶ 13. In Summer 2019, Plaintiff was promoted to "Senior Director, Healthcare and Education Team" (the "Healthcare Team") and received a 16% increase in her salary. *Id.* ¶ 14. Her new immediate supervisor was Robert Holden, one of Defendant's three Senior Principals. *Id.* ¶ 15.

In late 2019 and continuing into 2020, Holden began to seek Plaintiff's termination. *Id.* ¶ 16. Holden directed staffers not to work directly with Plaintiff and the Healthcare Team because it "would complicate matters." *Id.* ¶ 16. In Winter 2020, Holden's subordinate, Zach Cook (who is male and 30 years of age), directed members of Holden's staff to check the Healthcare Team's work for "errors." *Id.* ¶ 16. Plaintiff alleges that Holden's staff were not qualified to perform such review and that younger male managers were not subject to similar review. *Id.* ¶ 17.

Plaintiff alleges that Holden, Cook, and other managers made unspecified demeaning remarks about female managers and staff. *Id.* ¶ 18. Plaintiff asserts that Cook derided Plaintiff's divorced status and her academic credentials. *Id.* Plaintiff alleges that Cook and other unidentified male managers received multiple promotions that were denied to female staffers and that there was a "brutally toxic environment toward Plaintiff and other female staffers." *Id.*

Plaintiff repeatedly informed Holden and another Senior Principal, Mark Anderson, that the Healthcare Team was understaffed, but her concerns were ignored. *Id.* ¶ 19. The staffing problem grew exponentially after Defendant was engaged by Humana Corporation to perform

---

[3] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

healthcare-related regulatory and legislative work. *Id.* ¶ 20. In March 2020, Humana's demands increased dramatically with the onset of the COVID-19 pandemic. *Id.* ¶ 21. The Healthcare Team was overwhelmed. *Id.* ¶ 22.

Holden regularly lashed out at Plaintiff over operational matters related to the Healthcare Team. *Id.* ¶ 23. During these outbursts, Holden would scream and slam his fists onto office furniture. *Id.* Holden's outbursts were directed at Plaintiff and other female staffers, but not younger male staffers. *Id.* These interactions affected Plaintiff's mental and physical health. *Id.* ¶ 24. In 2020, Plaintiff sought treatment with a mental health provider. *Id.*

On August 12, 2020, Plaintiff lodged a complaint with Defendant about Holden and the "abusive work environment that he was creating." *Id.* ¶ 25. In an August 20, 2020 meeting with Anderson, Plaintiff described the work environment in the Healthcare Team, as well as Holden's behavior. *Id.* ¶ 26. In response, Anderson initiated an investigation to be conducted by Meredith Campbell, Esq. *Id.* ¶ 27.

On August 27, 2020, Plaintiff met with Campbell and described the abusive work environment stemming from "Holden's threatening behavior directed at her and other female staffers." *Id.* ¶ 28. Campbell assured Plaintiff that her interview would be confidential. *Id.*

On September 18, 2020, Plaintiff provided a signed statement regarding her interview with Campbell. *Id.* ¶ 29. Two months passed without any noticeable action, and, on October 20, 2020, Plaintiff sent Anderson an email informing him that she wanted to reach out to him about the issues she had raised with him. *Id.* ¶ 31. Anderson then agreed to meet with Plaintiff. *Id.*

On October 21, 2020, Anderson delivered "an ultimatum" to Plaintiff indicating that she could: (i) continue to work on the Healthcare Team as managed by Holden; or (ii) be moved off the Healthcare Team and be supervised by Anderson on special projects, which would not provide

any supervisory authority. *Id.* ¶ 32. Anderson did not provide any further details about the proposed new position or special projects, but he did explain that Plaintiff would not have a team. *Id.* ¶ 33.

On October 30, 2020, Plaintiff informed Anderson that she would accept the new position. *Id.* ¶ 34. Anderson told Plaintiff that her new title would be "Senior Director and Counsel, Policy Research." *Id.*

Cook became Plaintiff's successor on the Healthcare Team, despite no regulatory experience. *Id.* ¶ 35.

Anderson did not provide Plaintiff with specific guidance regarding the special projects on which she was to work. *Id.* ¶ 36. On November 30, 2020, Plaintiff sent Anderson an email informing him of her handover to Cook and seeking direction regarding her new job duties. *Id.* ¶ 37. Anderson responded the same day with a list of projects that "we can transfer to you now." *Id.*

On December 10, 2020, Anderson gave Plaintiff a list of performance goals for 2021 on special projects. *Id.* ¶ 38. On December 11, 2020, Anderson "excoriated" Plaintiff after she asked questions regarding a COVID-related project and accused her of erecting obstacles. *Id.* ¶ 39.

Plaintiff received a bonus for her job performance in 2020. *Id.* ¶ 40.

In a January 7, 2021 email, Anderson faulted Plaintiff for not following her job description and told her, "if you do not have time to do your job, or if you need me to help you prioritize, let me know." *Id.* ¶ 41. Anderson later continued to "badger" Plaintiff about not meeting Defendant's performance expectations. *Id.* ¶ 42.

In March 2021, Plaintiff expressed additional concerns about discrimination, harassment, and retaliation to Stephanie Reich, a Vice President. *Id.* ¶ 43. Plaintiff then met with Campbell

4

and reiterated the same. *Id.* Plaintiff met with Campbell for a third time on March 16, 2021. *Id.* ¶ 44. Although Plaintiff provided Campbell with the names of other employees who could corroborate Plaintiff's claims, Plaintiff alleges that Campbell did not interview them. *Id.* ¶ 45.

Plaintiff alleges that principals and coworkers shunned Plaintiff and that she was given little productive work to perform. *Id.* ¶ 46.

On April 6, 2021, Plaintiff resigned her employment with Defendant, effective April 20, 2021. *Id.* ¶ 49. Plaintiff informed Defendant that, in her view, her resignation was involuntary, and that she was being constructively discharged. *Id.*

On May 27, 2021, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC"). *Id.* ¶ 6. On May 17, 2023, the EEOC issued a Right to Sue Letter. *Id.* ¶ 7.

B.  Procedural Background

On August 15, 2023, Plaintiff filed her Complaint. Dkt. 1. On November 15, 2023, current counsel first appeared on behalf of Plaintiff. Dkt. 3. After the appearance of counsel, Plaintiff sought and was granted extra time in which to serve her Complaint. Dkt. 6. After serving Defendant, Plaintiff then sought leave to amend her Complaint. Dkts. 9-11. On March 4, 2024, leave was granted, and Plaintiff filed her Amended Complaint. Dkts. 17-18.

On March 18, 2024, Defendant filed its pending Motion to Dismiss which seeks to dismiss Counts IV-VIII of the Amended Complaint. Dkts. 20-21. Defendant also filed an Answer with affirmative defenses. Dkt. 23. After receiving additional time to respond to the motion, Plaintiff filed her Opposition Brief on April 5, 2024. Dkt. 27. Defendant then filed its Reply. Dkt. 28.

After the Motion was fully briefed, Plaintiff moved for leave to file a second amended complaint. Dkt. 29. Defendant moved to strike. Dkt. 31. Plaintiff then withdrew her motion. Dkt. 32.

On May 8, 2024, Plaintiff filed a notice of supplemental authority. Dkts. 33-34. On May 16, 2024, Plaintiff filed a response. Dkt. 35.

## II. STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

III.  ANALYSIS

Plaintiff's Amended Complaint asserts eight causes of action: (i) a gender discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII") (Count I); (ii) a retaliation claim under Title VII (Count II); (iii) a hostile work environment claim under Title VII (Count III); (iv) an age discrimination claim under the Age Discrimination in Employment Act (the "ADEA") (Count IV); (v) a retaliation claim under the ADEA (Count V); (vi) a hostile work environment claim under the ADEA (Count VI); (vii) an unlawful retaliatory hostile work environment claim under Title VII and the ADEA (Count VII); and (viii) a constructive discharge claim under the ADEA and Title VII (Count VIII). Dkt. 18.

In its Motion to Dismiss, Defendant seeks to dismiss the ADEA counts (Counts IV, V, and VI) as well as Count VII to the extent it relies on the ADEA and the constructive discharge claim (Count VIII) in its entirety. Dkt. 21. In her Opposition, Plaintiff stipulated to the dismissal of her ADEA claims. Dkt. 27 at 2. Thus, the only claim at issue on this motion to dismiss is Plaintiff's constructive discharge claim. For the reasons set forth below, the Court will grant the Motion to Dismiss with respect to the constructive discharge claim.

A plaintiff may establish a constructive discharge by showing that her employer "made [her] working conditions intolerable in an effort to induce [her] to quit." *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006). But, as the Fourth Circuit has noted, "mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Id.* In assessing whether a work environment is intolerable, the Fourth Circuit has instructed that a reviewing court must assess "whether a 'reasonable person' in the employee's position would have felt *compelled* to resign,' . . . that is, whether [s]he would have had *no choice* but to resign."

7

*Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019) (emphasis in original). As judges within this District have recognized, "constructive discharge claims are held to a high standard, and even truly awful working conditions may not rise to the level of constructive discharge." *Lindsay-Felton v. FQSR, LLC*, 352 F.Supp.3d 597, 606 (E.D. Va. 2018).

Whether Plaintiff's constructive discharge claim is premised on retaliation or gender-based discrimination, Plaintiff's claim fails because Plaintiff has not plausibly alleged intolerability. There is a slight difference in the allegations with respect to each basis for Plaintiff's alleged constructive discharge claim, however. The Court will therefore first address the gender-based constructive discharge claim. Although the Court does not assess whether Plaintiff has plausibly alleged that the work environment under Plaintiff's prior supervisor (Holden) was hostile or abusive, the Court notes that Plaintiff had not been working with or for Holden for more than five months at the time she resigned. *See* Dkt. 18 ¶ 34 (Plaintiff transfers to work under Anderson); *id.* ¶ 49 (Plaintiff resigns). Plaintiff does not allege, and the Court cannot reasonably infer from the allegations in the Amended Complaint, that Anderson had any gender-based bias. Thus, in circumstances such as these where a plaintiff has been transferred away from the allegedly discriminating supervisor, district judges within the Fourth Circuit have found that there is not a plausible constructive discharge claim. *See Bryan v. Lucent Techs., Inc.*, 307 F.Supp.2d 726, 743 (D. Md. 2004) ("Bryan had transferred away from Herr's egregious and legally actionable behavior. Moore's and Worley's comments, while making Bryan feel unfairly criticized, were not so insufferable and intolerable as to compel a reasonable person to resign a highly remunerative position.").[4]

---

[4] *See also Walker v. Regan*, No. 1:21-cv-312, 2023 WL 6224635, at *4 (E.D. Va. Sept. 22, 2023) (holding that job transfer was "plainly inadequate" to state a constructive discharge claim); *McKie v. Wachovia Corp.*, No. 3:05-2654, 2006 WL 3098772, at *1 (D.S.C. Oct. 30, 2006)

Plaintiff relies on a series of cases to suggest intolerability in support of her gender-based constructive discharge claim that are inapposite here. To begin with, this Court's decision in *Kerns v. RCS Trucking & Freight, Inc.*, No. 1:22-cv-1200, 2023 WL 4868555 (E.D. Va. July 31, 2023), is not instructive here. In *Kerns*, the Court relied on the alleged fact that it "was impossible for [plaintiff] to avoid [the alleged harasser] at work." *Id.* at *9. Here, Plaintiff was transferred away from the alleged harasser and does not allege that she had any interactions with Holden from October 30, 2020, until the time that she resigned. Dkt. 18 ¶¶ 36-49. Moreover, Plaintiff's allegations regarding her post-October 30, 2020 work environment are generally vague and conclusory and cannot support a plausible claim of an ongoing hostile environment. Dkt. 18 ¶¶ 46-47 (vaguely alleging that the "workplace was grossly hostile and abusive" without specific supporting factual allegations). Plaintiff also relies on *Sunkins v. Hampton Roads Connector Partners*, No. 2:23cv91, 2023 WL 7411761 (E.D. Va. Nov. 9, 2023), a decision by U.S. District Judge Rebecca Beach Smith. In *Sunkins*, the plaintiff was found to state a plausible claim for a constructive discharge where "the employer require[d] the employee to have continued interactions with her harasser." *Id.* at *8.

That is not the case here, where Plaintiff transferred to a position under a different supervisor. Here, Plaintiff's claims were investigated by an outside investigator and Plaintiff was given the opportunity to transfer to a new position away from her alleged harasser. Outside of her allegations regarding Holden, with whom she no longer worked at the time that she resigned,

---

(holding that plaintiff failed to establish a constructive discharge where she was transferred to a new position); *Bennett v. Charles Cnty. Public Schs.*, No. 04-cv-1501, 2006 WL 4738662, at *4 (D. Md. May 23, 2006) (holding that plaintiff failed to establish a constructive discharge claim where plaintiff could not establish "any incidences of discriminatory or retaliatory treatment in his new position").

9

Plaintiff has alleged no non-conclusory allegations that would support a gender-based constructive discharge claim. Accordingly, the Court will grant the motion to dismiss on this theory of liability.

To the extent that Plaintiff alleges a retaliatory constructive discharge claim, the scope of the allegation upon which Plaintiff may rely is wider and may be premised on actions taken by Anderson (who had knowledge of Plaintiff's protected activities). Here again, however, Plaintiff's allegations fail to meet the high requirements of setting forth a constructive discharge claim. Plaintiff alleges that Anderson "demoted" Plaintiff and then unfairly criticized Plaintiff for being unable to meet amorphous job requirements. As alleged, Plaintiff suffered no loss of pay but had a loss of supervisory responsibilities. Dkt. 18 ¶ 33. This Court and the Fourth Circuit have found similar circumstances unavailing. *See Carter v. Ball*, 33 F.3d 450, 459-60 (4th Cir. 1994) (recognizing that a "slight decrease in pay coupled with some loss of supervisory responsibilities" is insufficient evidence of constructive discharge); *Walker*, 2023 WL 6224635, at *4 (recognizing that a position change that was allegedly designed to "'set [plaintiff] up to fail' by assigning him tasks that he did not have the qualifications or skills to perform" was insufficient to allege a constructive discharge). Plaintiff's remaining complaints can fairly be characterized as falling into complaints about the "frustrations, challenges, and disappointments" of any job, because employees are not "guaranteed a working environment free of stress." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985); *Perkins*, 936 F.3d at 212 ("Critically, difficult or unpleasant working conditions and denial of management positions, without more, are not so intolerable as to compel a reasonable person to resign."). Specifically, courts have recognized that Plaintiff's concerns regarding her new position do not render her work environment intolerable. *See Bielert v. N. Ohio Props.*, 863 F.2d 47, 1988 WL 125357, at *5 (6th Cir. Nov. 25, 1988) (unpublished) (holding that plaintiff's "concern that the new job was undefined and would be of

10

possible short duration is insufficient to create a material dispute on the issue of constructive discharge").[5] Here, Plaintiff's only alleged basis for fearing the worst from Anderson is a single reference to an email from Anderson stating, "if you do not have time to do your job, or if you need me to help you prioritize, let me know." Dkt. 18 ¶ 41. But, at the same time, Plaintiff was still receiving bonuses commensurate with those she received in prior years and does not allege any disciplinary action was taken. *Id.* ¶ 40.[6] Thus, Plaintiff has failed to plausibly allege a constructive discharge claim based on retaliation.

Seeking to avoid this conclusion, Plaintiff relies on a series of cases that hold that, where a demotion is career ending, it may constitute a constructive discharge. Dkt. 21 at 13. Those circumstances are not present here. Plaintiff has alleged no facts from which this Court can reasonably infer that her transfer was "career-ending" as discussed in the *Carter* case. 33 F.3d at 459. Indeed, in *Carter*, the Fourth Circuit held that the loss of some supervisory responsibilities and projects did not establish a constructive discharge. *Id.* at 460. In *Vitello v. J.C. Penney Co.*, 108 F.3d 869, 1997 WL 87248 (4th Cir. Mar. 3, 1997) (unpublished), the Fourth Circuit relied

---

[5] *See also McCann v. Litton Sys., Inc.*, 986 F.2d 946, 952 (5th Cir. 1993) (holding that the employee's option of retiring or receiving a transfer to an undefined position with 12% pay cut, decrease in some job responsibilities, and change in supervisors does not constitute a constructive discharge as a matter of law); *Blake v. MJ Optical, Inc.*, 870 F.3d 820, 826 (8th Cir. 2017) (finding no constructive discharge claim and recognizing that "[p]art of an employee's obligation to be reasonable . . . is an obligation not to assume the worst, and not to jump to conclusions too fast").

[6] It bears repeating that many of Plaintiff's allegations about her post-October 2020 working environment are vague and conclusory and unsupported by specific factual allegations. For example, Plaintiff alleges that "Anderson repeatedly badgered Plaintiff," but provides no factual information regarding those events. Dkt. 18 ¶ 42. Similarly, Plaintiff alleged in a wholly conclusory manner that "Defendant's principals ignored Plaintiff or treated her in a demeaning manner" and that Plaintiff's "co-workers shunned her," but Plaintiff alleges no facts to support these conclusory allegations. *Id.* ¶ 46. Nor does Plaintiff allege that she previously had a good relationship with either the principals or her co-workers. As the Supreme Court has recognized, such vague and conclusory allegations are insufficient to support a plausible claim. *Iqbal*, 556 U.S. at 678.

heavily on a supervisor's "egregious personal harassment," including "comments about her age, the age of her clientele, and her need to retire." *Id.* at *5. Similarly, in *Flinn v. Linpac, Inc.*, No. 6:05-cv-0102, 2006 WL 8446792 (D.S.C. Mar. 2, 2006), the court found that the plaintiff had adequately alleged that a transfer was "career ending" where the plaintiff alleged that "plaintiff's retirement was imminent" and "stated that plaintiff would leave by the end of the year." *Id.* at *8. Those circumstances are not present here, and Plaintiff's allegations do not support that her transfer was "career-ending" such that she was reasonable in quitting.

Again, Plaintiff's only specific allegation in support of the intolerability of her work environment is a single criticism from Anderson three months before she quit. Dkt. 18 ¶ 41. Plaintiff's other allegations are that Anderson "badgered" Plaintiff on unspecified occasions using unspecified language regarding "Plaintiff not meeting Defendant's ephemeral, unarticulated performance expectations." *Id.* ¶ 42. As the Fourth Circuit has emphasized, "displeasure with her work assignments and her disagreement with her negative performance evaluations do not suffice to support a constructive discharge." *Melendez v. Bd. of Educ. for Montgomery Cnty.*, 711 F. App'x 685, 688 (4th Cir. 2017). District judges in this Circuit have also rejected Plaintiff's claims that "shunning" by co-workers establishes a constructive discharge claim. *See, e.g., Bunch v. Caldera*, No. 00-cv-1142, 2001 WL 34366089, at *9 (E.D. Va. Jan. 16, 2001) (holding that plaintiff failed to establish a constructive discharge where she alleged that her coworkers "gossiped about and shunned her").

Here, Plaintiff has failed to plausibly allege facts demonstrating that a reasonable person in her position would have felt that they had no choice but to quit. At the time of her resignation, Plaintiff had been transferred away from her alleged harasser to a position of equal status and, to the extent Plaintiff has alleged any specific incidents following her transfer, those allegations fall

12

into the category of ordinary workplace stresses such that Plaintiff has not plausibly established that a reasonable person would have felt compelled to resign. Accordingly, the motion to dismiss Count VIII, the constructive discharge claim, will be granted.[7]

## IV. CONCLUSION

In sum, Plaintiff has stipulated to the dismissal of Counts IV-VI and Count VII to the extent that it relies on the ADEA. Additionally, because Plaintiff has failed to allege facts plausibly establishing that she was suffering an intolerable work environment at the time that she resigned, Plaintiff has failed to state a claim for constructive discharge. No party, however, addresses futility of amendment. Because no party has addressed futility of amendment and because the Court cannot, at this stage, say that it would be futile, the Court will provide Plaintiff with one further opportunity to amend her constructive discharge claim.

Accordingly, for the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 20) is GRANTED; and it is

---

[7] The Court notes that Plaintiff submitted as supplemental authority the Supreme Court's recent decision in *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024), in which the Supreme Court held that a person who is subjected to a job transfer does not have to show that any resultant harm was "significant" in order to demonstrate the adverse employment action element of a disparate treatment claim. *Id.* at 354. In her Notice, Plaintiff offered no explanation for why she thought the *Muldrow* decision was significant with respect to her constructive discharge claim. Dkt. 33. Plaintiff's withdrawn motion to amend acknowledges that "the *Muldrow* decision does not directly address a constructive discharge," but nonetheless argues that the decision is relevant. Dkt. 29 at 1. Plaintiff argues that this Court should find persuasive the *Muldrow* Court's decision that a plaintiff need "only prove that she suffered 'some harm.'" *Id.* at 2. But this is not the standard for a constructive discharge claim. Because an employee asserting a constructive discharge claim has resigned from her position, such an employee must show *more* than a plaintiff asserting an ordinary disparate treatment claim; a plaintiff alleging constructive discharge must allege that a reasonable person would have found the circumstances intolerable. *See Decoster v. Becerra*, 119 F.4th 332, 339-40 (4th Cir. 2024) (recognizing that an employee asserting constructive discharge must allege circumstances "so intolerable that a reasonable person would resign" and finding that "general characterizations of tone" are insufficient to establish a constructive discharge). Accordingly, the *Muldrow* decision is not applicable to the issues to be decided with respect to the motion to dismiss.

13

FURTHER ORDERED that Counts IV-VI and Count VII to the extent it relies on the ADEA are DISMISSED pursuant to Plaintiff's stipulation; and it is

FURTHER ORDERED that Count VIII is DISMISSED because Plaintiff has failed to state a claim; and it is

FURTHER ORDERED that Plaintiff may file any Amended Complaint within FOURTEEN (14) DAYS of the entry of this Memorandum Opinion and Order to amend Count VIII. If Plaintiff fails to file an Amended Complaint by that date, the Court will assume that Plaintiff is foregoing constructive discharge claim and will issue a scheduling order; and it is

FURTHER ORDERED that Plaintiff's First Motion for Leave (Dkt. 29) is WITHDRAWN pursuant to Plaintiff's Notice of Withdrawal (Dkt. 32); and it is

FURTHER ORDERED that Defendant's Motion to Strike (Dkt. 31) is DENIED as MOOT.

It is SO ORDERED.

Alexandria, Virginia
January 15, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge